23 P.3d 492 (2001)
143 Wash.2d 636
Aaron C. ERMINE, Respondent,
v.
CITY OF SPOKANE; John Doe Barrington and Jane Doe Barrington, husband and wife and the marital community composed thereof, Petitioners.
No. 69680-2.
Supreme Court of Washington, En Banc.
Argued February 13, 2001.
Decided May 24, 2001.
*493 James C. Sloane, Spokane City Attorney, Rocco Nicholas Treppiedi and Michelle Dimond Szambelan, Assistants, Spokane, for Petitioner.
Lacy & Kane, Peter Devin Poulson, E. Wenatchee, for Respondent.
Williams, Kastner & Gibbs, Christopher S. Marks, Seattle; Keating, Bucklin & McCormack, Stewart Andrew Estes, Seattle, Amicus Curiae on Behalf of Washington Defense Trial Lawyers.
Jeffrey Lowell Needle, Seattle, Amicus Curiae on Behalf of American Civil Liberties Union.
MADSEN, J.
The petitioner maintains that the trial court abused its discretion when the court awarded attorney's fees pursuant to 42 U.S.C. § 1988 after plaintiff was awarded only nominal damages of $1 on his 42 U.S.C. § 1983 use of excessive force claim. The Court of Appeals affirmed the trial court's award of fees. We affirm the Court of Appeals.

FACTS
Respondent Aaron Ermine sued the City of Spokane and Spokane Police Officer Jeffrey Barrington, alleging use of excessive force in making an arrest, negligence, false arrest, and violation of his federal constitutional rights. Ermine's suit arose from events occurring March 24, 1995, when Barrington arrested Ermine for obstructing a public servant and resisting arrest. On that day, Ermine was a passenger in a car involved in a high-speed chase with the Spokane police. Ermine testified that he tried to get the driver to stop and also tried to jump from the car several times but was unable to do so. After the car was driven over a traffic median and through a Spokane park, it became disabled and stopped. Ermine and the driver both got out of the car. The driver fled.
According to Ermine, he put his hands up and began walking to the back of the car. Officer Barrington yelled "Get down on the ground." I Verbatim Report of Proceedings (RP) at 76. Ermine said he began to get down on one knee when Barrington grabbed him by the back of his head, slammed him down onto the concrete, and hit him several times in the back of the head and the neck. Ermine testified that he cupped his hands over his head. Id. at 77. He testified that while he was on the ground, Officer Barrington said "That will teach you to f___with the cops." I RP at 79.
According to Officer Barrington, when he yelled at Ermine to get down on the ground Ermine refused to obey the command and instead continued toward Barrington. Officer Barrington attempted to place Ermine in "a left arm control" in the street, but Ermine began to pull away, flailing his right arm, and Barrington had a difficult time trying to maintain his hold. II RP at 190-92. Officer Barrington then attempted to prevent Ermine from running away or striking Barrington by taking Ermine to the ground in a "left arm control." II RP at 190. Ermine continued to struggle, rolling over, kicking, and swinging his arms. Barrington gave Ermine a series of "open palm strike[s]" and a "knee strike" but was still unable to control Ermine enough to handcuff him until another officer arrived. II RP at 195-99. Together, the officers handcuffed Ermine, and arrested him for obstructing a police officer and for resisting arrest.
Ermine was injured during the encounter, and was taken to a hospital by ambulance. There, he received treatment and pain medication for injuries to his face, elbow, and back.
In May 1996, Ermine filed a claim with the City of Spokane (City) seeking $500,000 in damages for violation of his civil rights, false arrest, and assault and battery. Although not in the record, the City obviously denied *494 the claim.[1] In January 1997, Ermine filed suit against the City and Officer Barrington, claiming use of excessive force, negligence, and false arrest. Ermine also brought a claim under 42 U.S.C. § 1983, alleging that Barrington's use of excessive force violated his federal rights under the First, Fourth, Fifth, and Fourteenth Amendments. He sought unspecified compensatory and punitive damages, and costs including attorney's fees.
The case went to mandatory arbitration on the basis that, as Ermine indicated, the relief sought was a money judgment and the case involved no claim in excess of $35,000. Ermine lost in arbitration, and sought a trial de novo. At trial, at the close of plaintiff's case, the court granted plaintiff's motion for dismissal of the constitutional claim against the City due to lack of evidence that any of Ermine's constitutional rights were violated as a result of any custom, policy or practice of the City. During closing argument at the end of the three day trial, defense counsel asked the jury to award $1,212 in medical expenses, $1,200 for pain and suffering, $1,200 for nightmares and scabs on Ermine's face, and $2,500 in punitive damages.
The jury returned a verdict finding in favor of the defendants on all remaining claims except for a finding in favor of Ermine and against Officer Barrington on the § 1983 claim of use of excessive force. The jury determined Ermine's damages to be zero,[2] however, and also declined to award punitive damages. The trial court granted Ermine's motion for nominal damages[3] and awarded $1 in nominal damages.
Ermine also sought $19,840 in attorney's fees. The trial court first distinguished Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), where no fees were allowed when the plaintiff obtained only nominal damages, saying that Farrar involved a claim for $17 million from six defendants, 10 years of litigation and two trips to the Court of Appeals. Then the court said it could not ignore the jury's verdict in favor of Ermine, and reasoned that it had to consider the purpose of §§ 1983 and 1988 to discourage discrimination. The court considered the need for citizens to vindicate their civil rights. The court then said that under Farrar, in light of the jury's verdict, it had no choice but to reduce the attorney's fees, but that "some fairly substantial attorney fees are appropriate." III RP at 406.
Barrington appealed the award of attorney's fees. The Court of Appeals affirmed. Ermine v. City of Spokane, 100 Wash.App. 115, 996 P.2d 624 (2000). Barrington's petition for discretionary review by this court was granted.

ANALYSIS
Under 42 U.S.C. § 1988, a trial court may award reasonable attorney's fees to a party who prevails in a federal civil rights action under § 1983. An attorney's fee award under 42 U.S.C. § 1988 is reviewed under an abuse of discretion standard; discretion is abused when its exercise is manifestly unreasonable or based on untenable *495 grounds or reasons. Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 935 P.2d 555 (1997).
Officer Barrington contends that under Farrar, the only reasonable attorney's fee here is no fee. He argues that the Court of Appeals misapplied Farrar and relied on other cases that do not support an award of fees to Ermine. Ermine counters that the trial court correctly followed Farrar.
In Farrar, the United States Supreme Court held first that a party who recovers nominal damages on a § 1983 claim is a prevailing party for purposes of an attorney's fees award under § 1988. Then, the Court turned to the question whether attorney's fees were awardable where the plaintiffs in the case, who sought $17 million in compensatory damages, obtained only $1 in nominal damages. The jury had found that one of six defendants had deprived one of the plaintiffs of a civil right, but in an answer to a special interrogatory found that the defendant's conduct was not a proximate cause of any damages suffered by the plaintiff. Farrar, 506 U.S. at 106,113 S.Ct. 566.
Prior to its decision in Farrar, the Court's cases had established that the level of plaintiff's success is a relevant factor in determining the amount of fees to be awarded, and the Court had acknowledged congressional intent that a prevailing plaintiff should ordinarily be awarded attorney's fees unless special circumstances would make an award unjust. See Hensley v. Eckerhart, 461 U.S. 424, 429-30, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The level of plaintiff's success was recognized as one of a number of factors used to determine an appropriate fee award.[4] In Hensley, the Court addressed the question whether a partially prevailing party could recover an attorney's fee for legal services on unsuccessful claims, and the Court emphasized that in such a case the extent of a plaintiff's success is the crucial factor in determining the proper attorney's fees award under § 1988. Hensley, 461 U.S. at 440, 103 S.Ct. 1933. The Court explained that where the plaintiff failed to prevail on a claim unrelated to the successful claim, the hours spent on the unsuccessful claim should be excluded when considering the amount of the fee. Id. Where related claims are involved, a plaintiff obtaining substantial relief should not have the fee reduced simply because not each contention was adopted by the district court. Id. If, however, the plaintiff achieves only limited success, the district court should award fees only in an amount that is reasonable in relation to the results obtained. Id.
Then, in Farrar, the Court reasoned that the degree of success may, in some cases, go to the availability of attorney's fees, and not just to the proper amount. In Farrar, the district court had calculated attorney's fees based upon a reasonable hourly rate multiplied by the number of hours reasonably spent on the litigation. See Farrar, 506 U.S. at 114, 113 S.Ct. 566. The Supreme Court noted that this approach failed even to follow Hensley. Id. The Court then stated that the district court failed to engage in any measured exercise of discretion, reasoning that "`[w]here recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.'" Id. (quoting City of Riverside v. Rivera, 477 U.S. 561, 585, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)) (Powell, J., concurring in judgment). The Court said:
Having considered the amount and nature of damages awarded, the [trial] court may lawfully award low fees or no fees without *496 reciting the 12 factors bearing on reasonableness, see Hensley, 461 U.S., at 430 n. 3 [, 103 S.Ct. 1933], or multiplying "the number of hours reasonably expended ... by a reasonable hourly rate," id., at 433 [, 103 S.Ct. 1933].
Farrar, 506 U.S. at 115,113 S.Ct. 566.
The Court in Farrar stated, "[i]n some circumstances, even a plaintiff who formally `prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party." Id. The court said that "the awarding of nominal damages ... highlights the plaintiff's failure to prove actual, compensable injury." Id.
The Court concluded: "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief ... the only reasonable fee is usually no fee at all." Id. Thus, where the plaintiff seeks recovery of private damages, but obtains only nominal damages, the trial court may decline to award attorney's fees or award a low fee without considering the 12 Johnson factors.
As federal courts have recognized, Farrar does not set forth a per se rule that attorney's fees are improper when only nominal damages are obtained. See, e.g., Milton v. City of Des Moines, 47 F.3d 944, 946 (8th Cir.1995); Wilcox v. City of Reno, 42 F.3d 550, 554 (9th Cir.1994). Many of the federal Courts of Appeals have relied on Justice O'Connor's concurrence in Farrar for guidance in determining whether a prevailing party awarded nominal damages has achieved only a technical or de minimis recovery making an attorney's fee award inappropriate. E.g., Cabrera v. Jakabovitz, 24 F.3d 372 (2d Cir.1994); Johnson v. Lafayette Fire Fighters Ass'n Local 472, 51 F.3d 726 (7th Cir.1995); Briggs v. Marshall, 93 F.3d 355 (7th Cir.1996); Jones v. Lockhart, 29 F.3d 422 (8th Cir.1994); Morales v. City of San Rafael, 96 F.3d 359 (9th Cir.1996), amended by 108 F.3d 981 (9th Cir.1997); Phelps v. Hamilton, 120 F.3d 1126 (10th Cir.1997); Brandau v. Kansas, 168 F.3d 1179 (10th Cir.1999); cf. Sheppard v. Riverview Nursing Ctr., Inc., 88 F.3d 1332 (4th Cir. 1996) (when applying Farrar in the context of a Title VII mixed motive case); Garcia v. City of Houston, 201 F.3d 672 (5th Cir.2000) (same).
Justice O'Connor joined the majority in Farrar as the fifth vote,[5] and also separately wrote to explain more fully why, in her opinion, denial of fees was appropriate: "When the plaintiff's success is purely technical or de minimis, no fees can be awarded. Such a plaintiff either has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero." Farrar, 506 U.S. at 117, 113 S.Ct. 566 (O'Connor, J., concurring). However, Justice O'Connor reasoned, not all nominal damage awards are merely technical victories, and she suggested three factors which help to identify cases where the plaintiff has achieved a level of success justifying an attorney's fees award even though obtaining only nominal damages: (1) whether or not there is a substantial difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff claims to have prevailed; and (3) whether the success might be considered material because it has also accomplished some public goal. Id. at 120-22, 113 S.Ct. 566 (O'Connor, J., concurring).
We applied Farrar in Sintra, but did not use these factors in assessing whether the plaintiff's success was merely technical or de minimis. While we recognize that Justice O'Connor's separate concurring opinion is not binding, we find, as have other courts, that the factors she suggests are helpful in determining whether a plaintiff who has received only nominal damages on a § 1983 claim falls within the "narrow category of cases [under Farrar] where no attorney's fees should be awarded." Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir.1997).
*497 Turning to the first factor, the difference between the judgment recovered and the judgment sought, the City focuses on Ermine's initial claim for $500,000. It is apparent to this court, however, that this case involved a small claim. Ermine sought less than $35,000 through arbitration, and at trial requested that the jury award only $6,112. The Seventh Circuit has noted the difference between a case, like Farrar, where the plaintiff was "aiming high and fell far short... in the process inflicting heavy costs on his opponent and wasting the time of the court," and a case which "was simply a small claim ... tried accordingly." Hyde v. Small, 123 F.3d 583, 585 (7th Cir.1997).
In a similar vein, the court in Brandau v. Kansas, 168 F.3d 1179 (10th Cir.1999) upheld an award of attorney's fees and expenses of $41,598.13 where the plaintiff prevailed on a Title VII hostile work environment sexual harassment claim,[6] and the jury awarded her $1 nominal damages. With regard to the first of Justice O'Connor's factors, the Tenth Circuit noted the district court's determination that the plaintiff sought only 21 months in back pay and $50,000, in contrast to the $17 million in Farrar, and also noted the fact that that plaintiff's suit was not protracted. Id. at 1182. In Jones v. Lockhart, 29 F.3d 422 (8th Cir.1994), the plaintiff was a state prisoner who brought a § 1983 action against prison officials and prevailed on his claim of excessive force. He was awarded nominal damages of $1 and punitive damages of $1, and the district court awarded $25,000 in attorney's fees. On appeal, the Eighth Circuit upheld the attorney's fees award, relying on Justice O'Connor's factors for guidance. Considering the first factor, the court observed that while there was a discrepancy between the amount sought and that recovered ($860,000 and $1), "it pales in comparison to the discrepancy presented in Farrar." Id. at 424.
The difference between the judgment obtained and the relief sought in this case, as in Brandau and Jones, is not of the same magnitude as that in Farrar. Ermine's request for slightly over $6,000 was modest indeed in comparison to the relief sought in Farrar. And the difference between the amount he sought and that which he obtained does not reflect the degree of disparity that existed in Farrar.
The second factor is the significance of the legal issue on which Ermine prevailed. In Jones, the Eighth Circuit reasoned that the "vindication of the constitutional right to be free from cruel and unusual punishment is a significant legal issue in contrast to the injury to a business interest alleged in Farrar." Id.; see Lucas v. Guyton, 901 F.Supp. 1047, 1055 (D.S.C.1995) (death row inmate's excessive force claim against correctional officers; "the constitutional right to be free from cruel and unusual punishment ... is one of the premises upon which this great nation was founded and that right continues to distinguish this nation today"); cf. Piper v. Oliver, 69 F.3d 875, 877 (8th Cir.1995) (the right to be free from physical detention is a significant one). We similarly conclude that the legal issue involved here is significant. Unlawful physical beatings by the government's agents are abhorrent, and citizens are entitled to be free of such conduct. As Judge Posner, in an opinion written in a case involving an award of $500 for false arrest, reasoned:
The district court based its decision to award no fees on the small size of the verdict and the fact that the case broke no new ground in the law of police abuses. If these are sufficient grounds it means that routine police misconduct that, although unconstitutional, is neither harmful enough to support a large award of compensatory damages nor malicious enough to justify an award of punitive damages is, as a practical matter, beyond the reach of the law. It is impossible, unless there is an expectation of a fee award (and often not then), to interest a competent lawyer in bringing a suit in federal court to recover a small amount of damages unless the plaintiff is a rich person willing to finance the suit out of his own pocket rather than by means of *498 a contingent-fee contract, the normal way in which tort suits are financed in this country. Yet the cumulative effect of petty violations of the Constitution arising out of the interactions between the police (and other public officers) and the citizenry on the values protected by the Constitution may not be petty, and if this is right then the mere fact that a suit does not result in a large award of damages or the breaking of new constitutional ground is not a good ground for refusing to award any attorneys' fees.
Hyde v. Small, 123 F.3d 583, 585 (7th Cir.1997).
The second factor has also been seen as involving an assessment of how successful plaintiff was, given the defendants sued and the issues raised. E.g., Muhammad v. Lockhart, 104 F.3d 1069, 1070 (8th Cir.1997); see Farrar, 506 U.S. at 121, 113 S.Ct. 566 (O'Connor, J., concurring) (plaintiff recovered only $1 from just one of six defendants, and the only one the jury found did not engage in a conspiracy). As the trial court observed, Farrar involved a claim for $17 million from six defendants, 10 years of litigation and two trips to the Court of Appeals. As we have noted, the jury found only one defendant violated the plaintiff's civil rights, and found that that violation did not proximately cause any of the plaintiff's damages. Here, the trial lasted just three days,[7] and Ermine was successful in establishing that Officer Barrington used excessive force. Additionally, in contrast to Farrar, there were no special interrogatories to the jury, and thus no jury finding that the constitutional violation did not proximately cause plaintiff's injuries.
The third factor described by Justice O'Connor entails inquiry into whether Ermine's success might be considered material because it has also accomplished some public goal. Ermine relies upon the purpose of § 1988 to provide an incentive for competent and skilled attorneys to take on unpopular cases and indigent clients, thereby acting as "private attorney general." He also urges that the nominal award he obtained has a deterrent effect, serving the public purpose of helping to protect him and others from future similar unlawful conduct.
While, as Justice O'Connor said, § 1988 is not "`a relief Act for lawyers,'" it is, as she also said, a tool that ensures vindication of important civil rights by making fees available under a private attorney general theory. Farrar, 506 U.S. at 122, 113 S.Ct. 566 (O'Connor, J., concurring) (quoting City of Riverside v. Rivera, 477 U.S. at 588, 106 S.Ct. 2686 (Rehnquist, J., dissenting)). The Court has quoted: "`If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers.'" City of Riverside v. Rivera, 477 U.S. at 575, 106 S.Ct. 2686 (plurality) (quoting 122 Cong. Rec. 33313 (1976) (remarks of Sen. Tunney)).
The Eighth Circuit in Jones, 29 F.3d at 424, said that civil rights litigation serves an important public goal, vindicating policy that Congress intended to be of the highest priority. This can be said, however, with regard to any constitutional claim under § 1983 on which plaintiff prevails, and Farrar indicates attorney's fees are not always awardable in § 1983 actions even where plaintiff is a prevailing party. It may be that small claims vindicating civil rights to be free from police abuse may have a cumulative effect serving the public goal of fostering a society where law enforcement officers preserve rather than violate individual constitutional rights. See Hyde v. Small, 123 F.3d at 585. However, this kind of reasoning could be applied to virtually any constitutional violation, and thus cannot support, under Justice O'Connor's third factor, an attorney's fees award.
Moreover, Ermine's case effected no change in government policies or practices, in contrast to cases where courts have found the third factor satisfied where the defendant changed its unconstitutional policies or practices as a result of a § 1983 suit. For example, *499 the Ninth Circuit upheld an attorney's fees award of over $66,000 in a nominal damages excessive force claim, finding that the third factor favored an award because the jury determined a city policy to be unconstitutional, and during the course of the litigation the city disciplined the offending officer and modified its use of force policy. Wilcox, 42 F.3d at 556-57. The city's police chief even testified at trial that he used a video of the event as a training device to show what force was not acceptable. In Johnson, 51 F.3d 726, nonunion firefighters brought a § 1983 action challenging the constitutionality of a provision of a collective bargaining agreement. They sought declaratory and injunctive relief and nominal damages, and were awarded declaratory relief, and $33,096.96 in costs and attorney fees. On appeal, the Seventh Circuit upheld the fees award. Concerning the third factor suggested by Justice O'Connor, the court reasoned that a public goal was achieved because the union had been out of compliance with constitutional requirements for six years and only modified its procedures after commencement of the nonunion fire fighters' suit; plaintiffs' success assured that future nonmembers would be afforded the required procedures. Id. at 726.
Although not all of the factors favor an attorney's fees award, they are, as we have said, useful as guidance. There is no requirement that all three factors affirmatively support an award. Nor are they necessarily the only factors which may be relevant.
In assessing the propriety of the trial court's award of attorney's fees, we emphasize that the standard of review is abuse of discretion. As the court said in Piper, "[t]he deferential abuse of discretion standard has been and remains paramount to our review of a ... court's decision to grant or deny attorney's fees in a nominal damages case." Piper, 69 F.3d at 877. The trial court applied Farrar, and awarded only half the attorney's fees requested, acknowledging the importance of the issue on which Ermine succeeded, while also acknowledging the nominal nature of the award. While reasonable minds might differ, we do not find the trial court's decision to half the award to be an abuse of discretion.
Ermine requests an award of reasonable attorney's fees to reimburse him for responding to Officer Barrington's appeal. We grant reasonable attorney's fees to him for successfully defending his award of attorney's fees in this civil rights litigation. See Aubin v. Fudala, 821 F.2d 45 (1st Cir.1987); Cunningham v. County of Los Angeles, 879 F.2d 481, 490 (9th Cir.1988); Fewquay v. Page, 907 F.2d 1046 (11th Cir.1990).
The Court of Appeals is affirmed.
ALEXANDER, C.J., SMITH, JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
NOTES
[1] According to Barrington, the City's claims adjuster offered Ermine $1,000 to settle the claim in lieu of suit. Pet. for Review at 3. This offer does not appear in the record except for a reference to it in a letter dated March 13, 1997, by Ermine's counsel making, among other things, an offer to settle the law suit for $10, 000. See Appendix B to the Petition for Review. The letter and trial briefs, to which the letter is attached, were made part of the record when Clerk Merritt granted the parties' agreed motion for supplemental designation of the clerk's papers.
[2] The jury's reasoning is, of course, unknown. One court has suggested three situations where an award of nominal damages might follow a verdict in favor of a plaintiff on a § 1983 excessive force claim. First, during the altercation between the plaintiff-detainee and a police officer, the officer might use both justifiable and excessive force, with injury resulting only from the justifiable force. Second, a jury might conclude that evidence concerning plaintiff's injuries is not credible. Third, nominal damages might be appropriate where the plaintiff's injuries have no monetary value or are insufficient to establish with a more substantial measure of damages with any reasonable certainty. Briggs v. Marshall, 93 F.3d 355, 360 (7th Cir.1996).
[3] If a plaintiff proves the elements of a § 1983 claim, the plaintiff is entitled to at least nominal damages. Mission Springs, Inc. v. City of Spokane, 134 Wash.2d 947, 971, 954 P.2d 250 (1998) (citing Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)).
[4] The 1976 House and Senate Reports addressing § 1988 refer to 12 factors, set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), as appropriate standards for determining a fee award. These factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
Hensley v. Eckerhart, 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citing Johnson, 488 F.2d at 717-19) (emphasis added).
[5] The Court of Appeals erroneously characterized the decision in Farrar as a plurality. Ermine v. City of Spokane, 100 Wash.App. 115, 120, 996 P.2d 624 (2000). A couple of other courts have made the same mistake. Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074, 1078 (10th Cir.1998); Lewis v. Am. Foreign Serv. Ass'n, 846 F.Supp. 77, 83 n. 9 (D.D.C.1993).
[6] The legislative history of § 1988 indicates that standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. Hensley, 461 U.S. at 433 n. 7, 103 S.Ct. 1933.
[7] Although the process in this case involved mandatory arbitration, plaintiff did not cause the need for arbitration.